A. J. SMITH. et al. v. G. W. SMITH et al., Adm'rs of DRURY SMITH.

*Administration—Executors and Administrators—Evidence—Exceptions—Distribution—Interest—Costs—Excusable Neglect—Reference.*

1. Exceptions to the findings of fact by a referee, under a reference by consent, except those which relate to the admission of incompetent or the rejection of competent testimony, or to those findings where there is no evidence to support them, are not reviewable.

2. Executors and administrators will not be charged with interest upon money received at the time of their qualification, or afterwards, in the administration of their trusts, where it appears that they have not used it for their own advantage, or that no profit has arisen from it. The same rule is applicable to choses in action—particularly where a settlement has been obstructed by unavoidable litigation.

3. Where it was agreed by some of the distributees and the administrator that, at a sale of the personal effects, the distributees might purchase "as for cash," and the amount of purchases should be charged against their respective distributive shares, some of the distributees being absent and others objecting: *Held,* that those purchasing should be charged with interest upon the amounts of their purchases from the date thereof until the final settlement.

4. Where the facts agreed upon as a basis of exceptions conflict with the finding of the referee, the exceptions should be overruled, especially where they are indefinite.

5. In an action for the settlement of accounts of executors and administrators, where there are separate answers and defences, and the interests of the defendants are conflicting, the adjustment of the costs is in the discretion of the Court below, and its judgment will not be disturbed in the Supreme Court. *The Code,* § 527.

6. Where, pending a reference, the counsel for the parties to the action became disqualified, but the client, although having notice of the subsequent orders, proceedings, &c., in the cause, neglected to retain other counsel: *Held,* that it was not such excusable neglect as required the Court to set aside the report and recommit the matter passed upon therein.

7. Where a party to an action against the representatives of a deceased person is examined as a witness by such representatives in respect to any transaction or communication with the deceased, his testimony in reply or explanation must be confined to the particular matters called out by the adversary party.

This is a civil action, commenced in 1877, and tried before *Clark, J.*, at January Term, 1888, of the Superior Court of Rockingham County, upon exceptions to referee's report.

Drury Smith died intestate in the county of Rockingham in January, 1873, and the defendants, G. W. Smith, L. F. Smith and Darien Smith, were duly appointed administrators of his estate, and executed bonds in the usual form in the penal sum of $36,000, for the faithful discharge of their duties, with the other defendants as sureties, and this action is brought by the plaintiffs, who, together with the defendants (except G. M. Grogan, W. A. Robertson and P. H. Martin), are the heirs-at-law and distributees of the said Drury Smith, against the administrators and the sureties on their bond, alleging divers breaches of said bond and demanding judgment for the amount of the penalty named therein, to be discharged upon the payment of such sums as may be found to be due to them upon an account and settlement of the estate.

, G. W. Smith and Darien Smith, two of the administrators, filed a joint answer, and their co-administrator, L. F. Smith, a separate answer, presenting collateral matters of controversy, which were compromised and settled, and a judgment in accordance with the compromise was entered with consent of all parties.

At Spring Term, 1878, by an order in the cause, it was referred to the Clerk to take and state an account.

At January Term, 1887, "by consent," the Clerk was allowed to withdraw as referee, and W. S. Ball, Esq., was substituted and appointed referee, "to make a report upon

the evidence heretofore taken under the former order of reference, and that he file his report, * * * subject to the same rights of exception as would have obtained if the original referee had completed his duties by a report."

The referee filed his report, together with all the evidence taken in the cause. The contesting parties filed numerous exceptions to the findings of fact by the referee, and also exceptions to his conclusions of law ; all of which, except two not material to this appeal, were overruled, and judgment rendered confirming the report, from which the plaintiffs, and some of the defendants, appealed.

*Messrs. H. R. Scott* and *R. B. Glenn,* for the plaintiffs.
*Mr. W. F. Carter,* by brief, for the defendants.

DAVIS, J. (after stating the case.) The record is very voluminous, comprising 357 pages of printed matter, the greater part of which consists of the evidence in the cause, sent up under the misapprehension that this Court will review the evidence and findings of fact. The original reference to David Settle was without objection by the plaintiffs, and by consent he was allowed to withdraw and W. S. Ball was substituted as referee, and his findings of fact are not subject to our review. The only reviewable exceptions in regard to the finding of fact by the referee must relate " either to evidence received after objection or offered and refused or the want of evidence of a fact found," and such exception must be specific. *Morrison* v. *Baker,* 81 N. C., 76 ; *Grant* v. *Reese,* 82 N. C., 72, and cases cited.

The plaintiffs' exceptions to the referee's conclusions of law are:

1. " As to conclusion one:   (1) For that he finds that the administrators are not chargeable with interest on moneys that came to their hands, there being no evidence on their part to show that they had not used the same for their own

purposes.   (2) For that he fails to find that they are charge-
able with interest on the purchases made by distributees."

Th ruling upon the first branch of the exception is. as fol-
lows :   " No charge for interest is made against the admin-
istrators for the money on hand at the death of the intestate,
nor for the actual money collected at the different sales.
These amounts, compared with the aggregate sum charged
against the administrators· for such sales and the sales to the
distributees, are inconsiderable, and it does not·appear that
the administrators had used any portion of the fund for their
own advantage, and it also seems that no actual profit has
been made from it to the administrators.   They should con-
sequently not be charged with interest in this regard."

This we think is correct.   The general rule is that an
executor or administrator who retains funds and keeps no
interest account to show what was in fact received will be
charged with interest.   " Interest," says GASTON, J., in *Graham*
v. *Davidson*, 2 D. & B. Eq., 155, (172), " according to the usage
of our Courts, follows debt as the ordinary attendant; therein
we depart from the English rule, and probably this distinc-
tion has resulted from the circumstances that in this country
money never lies idle, and he who holds from another what
is his is presumed, till the contrary appears, to have had it
out in schemes of profit."

In the case cited, the contrary not appearing, the execu-
tor was charged with interest, but in the case before us, it
appears from the report of the referee that the administra-
tors made no profit from the use of the money, and in this
respect the exceptions of the plaintiffs were properly over-
ruled.   *Spruill* v. *Cannon*, 2 D. &. B. Eq., 400.

With regard to the second branch of the exception, the
facts found by the referee are : " That it was agreed by and
between the administrators and a majority of the distribu-
tees that the said distributees might bid at the sale as cash
bidders, so far as their interest in the personal property
might go, and if they should bid more than such interest,

the excess should be deducted from the interest of said distributees in the real estate of the intestate, and that all the administrators assented to this agreement, but that A. J. Smith, one of the distributees, dissented, and that all the distributees were not present at the time of the agreement." The referee further finds that, pursuant to this agreement, certain of the distributees bid at the various sales and made purchases to the amount set out in a list accompanying the report. This list shows that of the amount of sales made by the administrators in 1873 and in 1874 (exceeding $12,000), much the larger portion was "to distributees, regarded as cash." Upon the facts the referee finds, as a conclusion of law, that interest should not be charged upon the sales to the distributees, "because the sales to them, agreed to between them and the administrator, amount in law to a distribution of the personalty on the spot, and all questions of interest are at once ended, both as to them and the administrators, so far as these sales are concerned, for such distribution amounts to the same as surrendering to the distributees a portion of their money."

This ruling would perhaps be just and unexceptionable, if the benefits of what is thus called a "distribution" were shared equally, or anything like equally, by all the distributees. In the distribution of the intestate's estate "equality is justice," and under the ruling excepted to, the distributees, who were purchasers and debtors, derived a benefit equivalent to the interest on what they owed down to the present time, while those who were not present made no purchases and did not assent to the agreement, and those who were minors and could not purchase, and who, therefore, could derive no benefit in the way of interest on their distributive shares, or any portion of such shares, are required now, after the lapse of many years (the sales were principally in 1872), to share equally with the purchasing distrib-

101—30

utees, some of whom purchased nearly to the amount of their distributive shares. Such a distribution would be manifestly unequal and unjust, especially to those who were minors.

Unquestionably, if the administrators had used the money they would have been chargeable with interest for the benefit of all the distributees; but as they did not use it, and the profit or use inured to the benefit of the debtor distributees alone, the inequality can be remedied and the injustice prevented by charging them, in the distribution of the estate, with interest on the amounts of their respective purchases or debts, and thus securing to all equality in the estate.

The second branch of the first exception of the plaintiffs to the conclusion of law must be sustained, and interest will be charged as indicated.

2. The second exception is to the refusal of the referee to charge the administrators with *interest* on the notes and other debts that came to their hands, and with which they were charged by the referee, " when, according to the evidence, they failed to make settlement, or to attempt to do so, within the time prescribed by law," &c., and they insist that the administrators shall be charged with interest down to the settlement. We can see no reason why a different rule in regard to interest should apply to " notes and other debts " with which the administrators are charged and the money on hand, or proceeds of sales made by them. In either case, as a general rule, if no interest account is kept, the administrator will be charged with interest on money, if improperly retained, but it does not appear that the money has been improperly retained by them, and it does appear, in the findings of the referee, that no profit accrued to them. Besides, " the peculiarity of this case," as is said by the referee, " is, that the settlement of it is retarded by litigation, which was commenced ten years ago " It would be manifestly unjust to charge the administrators with interest down

to the date of settlement, when, as is said, " there is so much time necessarily consumed in adjusting the various and conflicting claims."

The ruling of the Court below in .regard to the second exception is sustained.

3. The third exception is to the credits allowed in class " H " by the referee, which " were admitted by the plaintiffs' attorneys for their clients, whereas the plaintiffs' attorneys only admitte.l that such a list was filed, with the reservation of their objection."

Class " H," referred to in the exception, embraces divers credits, in regard to which the referee says they " have been mostly made up from a list furnished by plaintiffs' attorneys, admitted by them for their clients, inspected by the attorneys for the defendant administrators, and agreed to."

The fact stated as the basis of the exception is in conflict with the fact as stated by the referee, and the exception is vague and indefinite, in that it does not appear what the " objections," said to have been reserved, were.

In regard to this exception the ruling of the Court below is sustained.

4. The fourth exception is : " For that divers breaches of the bond have been clearly established in the evidence, as also serious laches on the part of the administrators; and the seventh conclusion of law is clearly erroneous, as causing the innocent sufferers from the breaches of the bond to pay for the expense of forcing the administrators to a settlement."

The seventh conclusion referred to is as follows: " The referee is of opinion, and so holds, that the costs, disbursements, allowances, attorneys' fees, and commissions ordered by the Court, of necessity, where the same have not already been ascertained and embodied in this report, should be charged *pro rata* against the shares of the distributees and heirs-at-law before the same are paid by the administrators."

The question of costs in the case before us is, under section 527 of *The Code*, "in the discretion of the Court," and an inspection of the record, the character of the litigation, the several orders, the conflicts of interests presented, not only between the plaintiffs on one side and the defendants on the other, but also collateral questions between the plaintiffs themselves, and between the defendants themselves, all tend to show that the ruling in regard to costs was not unjust, and it will not be disturbed.

The judgment below will be made to conform to this opinion.

Modified and affirmed.

APPEAL OF G. W. SMITH (ONE OF THE DEFENDANTS).

A motion was made by G. W. Smith to "re-open the report of the referee and to recommit the case, that further evidence may be offered in his behalf, and also to set aside the reference to W. S. Ball, made at January Term, 1887. Both motions were refused and defendant excepted."

Upon affidavits filed the facts as found by the Court are, in substance, that G W. Smith had an individual interest in the suit distinct from his interest as administrator, and employed counsel to represent him in his individual capacity who was not the counsel who represented him as administrator ; that he was told by counsel that any additional evidence he might offer could be presented to the referee before the evidence closed; that subsequently said counsel became Clerk of the Superior Court and ceased to act as counsel for said Smith, but that said counsel tendered to the referee all the evidence furnished by said Smith.    Said Smith knew his counsel had become Clerk of the Superior Court and had ceased to act as his counsel, but employed no other

counsel and offered no additional evidence, though several terms of the Court passed. On these facts the Court refused to recommit the case.

G. W. Smith was represented as administrator by counsel. His counsel in his individual capacity had become Clerk and ceased to act, and Smith knew it, but employed no other counsel. No exception was taken to the order appointing W. S. Ball as referee by any one, and Ball notified Smith of his appointment and cited him to appear before him, but he did not do so, and at this term he first makes objection to said order of reference to W. S. Ball. On these facts the Court declined to set aside the order of reference to W. S. Ball, and G. W. Smith excepted.

This action had been pending for a number of years, the defendant G. W. Smith had been duly made a party and was charged with notice of whatever action the Court may have taken therein while it was pending. *University* v. *Lassiter*, 83 N. C., 38, and cases cited.

But counsel for the appellant says that the application to set aside the order of reference to W. S. Ball was made within one year after the making of said order, and is therefore within section 274 of *The Code.* Assuming that to be so, the power conferred by section 274 is discretionary, and upon the facts found by the Court there was no error in refusing to recommit the cause or in declining to set aside the order of reference.

The defendant, G. W. Smith, also files numerous exceptions to the report of the referee, all of which, except the first and last, are abandoned in this Court.

The first is as follows:

" That the referee erred in excluding the evidence of G. W. Smith, the claimant, offered to establish his said claim, upon the ground that the same and every part thereof was objected to by plaintiffs, and was incompetent under section 590 of *The Code.*"

The appellant alleged that the estate of his deceased father, Drury Smith, was indebted to him individually in the sum of $1,890.90. Upon examination by plaintiffs, he was asked the following question :

"Did you not, about the year 1869, buy from your father, on a credit, two tobacco screws, a tobacco shape and a two-horse load of tobacco? If so, what were you to give for them ?"

"A. I did buy two screws from my father, also a shape, in 1872, I think, as the books will show. * * * * * We agreed on the price of the screws and shape, but I do not recollect what it was; the books, I think, between Drury Smith and myself will show, and I think the books will show a credit of $50 or $100."

Plaintiffs objected to defendant further answering in such a way as will tend to establish a claim in his favor against the deceased, Drury Smith. Objection overruled. When the witness resumed his answer as follows: "There was special contract in the agreement for the screws that I was to pay him so much money, and then the balance was to go between me and him on the account I kept against him."

This question having been asked by the plaintiffs, it was insisted, on behalf of G. W. Smith, that it rendered him competent, as a witness, to prove his claim against the estate of Drury Smith, deceased. The witness was permitted to testify in regard to the transaction relating to the screws and shape. He was asked divers questions in regard to his account, the items in the account and the understanding and agreement with the deceased in relation thereto, involving transactions other than that relating to the screws and shape. These questions were all objected to, and excluded under section 590 of *The Code*.

It is insisted by defendant's counsel that the questions in regard to the account were competent in explanation of a "transaction inquired of by plaintiffs," and that it was "one

entire transaction." The evidence is only competent so far as it is "concerning the same transaction or communication," testified to in a legitimate response to questions propounded by the adverse party. The exception in section 590 cannot have the broad scope and effect contended for by the counsel for the appellant, and while some of the questions, as for instance, "is $15 per month for a two-horse wagon, two mules and a driver, a reasonable charge?" would be competent as not involving a "personal transaction or communication" between the witness and the intestate, yet these questions were predicated upon transactions had with the intestate, referred to in the excluded testimony of the witness, and must, with that testimony, be excluded. If the facts upon which the questions were predicated had been established by competent evidence, then the question would have been competent, but the witness was not competent to testify to any "transaction or communication other than what pertained to the question asked by the plaintiff, and tended to discharge that claim." *Kesler* v. *Mauney,* 89 N. C., 369, and cases cited.

The appellant's first exception cannot be sustained.

The other exception insisted on is: "That W. S. Ball, referee, had no right to pass upon G. W. Smith's claim against the estate of Drury Smith, nor of his liability to the said estate, he, the said Ball, having been substituted as referee without the knowledge or consent of G. W. Smith, and that his findings in this regard are nullities."

For the reasons for not sustaining appellant's exception to the refusal to recommit the cause and to set aside the order substituting W. S. Ball as referee, this exception cannot be sustained.                           Affirmed.

SEPARATE APPEAL OF A. J. SMITH (ONE OF THE PLAINTIFFS).

A. J. Smith excepted individually to the report of the referee :

" For that the referee has applied the Confederate scale to the $1,000 bond of John P. Smith."

The note or bond of John P. Smith, referred to in the exception, was executed on the 1st day of June, 1863, and, in absence of evidence to the contrary, it is presumed to be scalable in Confederate currency, and the legislative scale furnishes the measure of the value of the contract in the absence of evidence to the contrary. *Palmer* v. *Love*, 82 N. C., 178.

The scale was properly applied as of the time when the note was made. *State* v. *Cowles*, 70 N. C., 124.

Affirmed.

APPEAL OF THE DEFENDANT ADMINISTRATORS.

The defendant administrators having failed to perfect their appeal, the exceptions by them to the findings of fact and conclusions of law, sent up with the record, have not been considered by the Court.